UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-CV-22541-BER

RUSTY115 CORP., et al,

                    Plaintiffs,

vs.

BANK OF AMERICA, N.A.,

                    Defendant.
_____/

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS (ECF No. 24)

Plaintiffs bring this lawsuit as victims of a Ponzi scheme, having loaned millions of dollars to purportedly finance the purchase of commercial aircraft. The loaned funds were deposited into a Bank of America (BOA) trust/escrow account owned by Wright Brothers Aircraft Title, Inc. (Wright Bros.), which then misappropriated the funds to further the scheme. Plaintiffs were ultimately defrauded out of more than $167 million and allege that BOA aided and abetted the fraud by vouching for Wright Bros. and inducing Plaintiffs to loan money based on material omissions and misrepresentations. BOA moves to dismiss the seven-count Complaint for inadequate pleading under Rules 12(b)(6) and 9(b).[1]  I heard oral argument of the motion on August 16, 2023.

_____

[1] The Complaint alleges claims for actual and constructive fraud (Counts I and II), aiding and abetting fraud (Count III), aiding and abetting breach of fiduciary duty (Count IV), negligent misrepresentation (Count V), negligence under §552 of the Restatement (Second) of Torts (Count VI), and negligence (Count VII). ECF No. 1-2.

## LEGAL STANDARDS

A pleading in a civil action must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To satisfy Rule 8, a claim must provide the defendant fair notice of plaintiff's claim and the grounds upon which it rests. *See Swierkiewicz v. Sorema N.A.,* 534 U. S. 506, 512 (2002). While a claim "does not need detailed factual allegations," it must provide "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007); *see Ashcroft v. Iqbal,* 556 U. S. 662, 678 (2009) (explaining that the Rule 8(a)(2) pleading standard "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation"). Nor can a claim rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal,* 556 U. S. at 678 (*quoting Twombly*, 550 U. S. at 557 (alteration in original)).

On a motion to dismiss under Rule 12(b)(6), the Court must view the well-pled factual allegations in a claim in the light most favorable to the non-moving party. *Dusek v. JPMorgan Chase & Co.*, 832 F.3d 1243, 1246 (11th Cir. 2016). Viewed in that manner, the factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the claim are true (even if doubtful in fact). *Twombly,* 550 U. S. at 555 (citations omitted). The Supreme Court has emphasized that "[t]o survive a motion to dismiss a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 570. In addition, "courts may infer from factual allegations in the

complaint obvious alternative explanations, which suggest lawful conduct rather than the unlawful conduct that plaintiff would ask the court to infer." *Am. Dental Assoc. v. Cigna Corp.*, 605 F. 3d 1283, 1290 (11th Cir. 2010) (citing *Iqbal,* 556 U. S. at 682). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Iqbal,* 556 U. S. at 678 (quoting *Twombly,* 550 U. S. at 557). When evaluating a motion to dismiss under Rule 12(b)(6):

> [A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Iqbal,* 556 U. S. at 679. Factually unsupported allegations based "on information and belief" are not entitled to the assumption of truth. *See Scott v. Experian Info. Sols., Inc.*, 2018 WL 3360754, at *6 (S. D. Fla. June 29, 2018) (J. Altonaga) ("Conclusory allegations made upon information and belief are not entitled to a presumption of truth, and allegations stated upon information and belief that do not contain any factual support fail to meet the *Twombly* standard.").

Where a pleading alleges a cause of action sounding in fraud, the allegations must satisfy Federal Rule of Civil Procedure 9(b), which says "a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Rule 9(b) does not change the elements of the underlying cause of action; it merely requires heightened fact pleading. "[A] plaintiff is required to plead the 'who, what,

when, where, and how' pertaining to the underlying fraud." *Cardenas v. Toyota Motor Corp.*, 418 F. Supp. 3d 1090, 1098 (S.D. Fla. 2019) (quoting *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1262 (11th Cir. 2006)). The purpose of the particularity pleading requirement "is to alert defendants to their precise misconduct and protect them against baseless charges of fraudulent behavior." *Cardenas,* 418 F. Supp. 3d at 1098 (citing *Durham v. Bus. Mgmt. Assocs.*, 847 F.2d 1505, 1511 (11th Cir. 1988)).

## FACTS ALLEGED IN THE COMPLAINT

Since at least 2002, Wright Bros. maintained a trust/escrow account at BOA (the "Trust Account") which it used to hold escrow funds for the finance and purchase of aircraft. ¶¶37, 38.[2]  Plaintiffs put up substantial deposits, that were to be held in escrow, for the future purchase of aircraft by others. ¶14. Plaintiffs were supposed to receive the return of the deposits they advanced once these sales transactions were either consummated or cancelled; in exchange for putting up these deposits, Plaintiffs were paid interest or a fee. *Id.* BOA also earned fees from maintaining the Trust Account and it therefore had a pecuniary interest in the Trust Account's transactions. ¶¶37, 161. Eventually, Plaintiffs learned that their money had not been held in escrow in the Trust Account, but that it had been paid out by BOA and used by the fraudsters for illicit purposes. ¶14.

Since at least 2015, BOA issued numerous letters of reference ("the Letters") on behalf of Wright Bros. to assure prospective Trust Account depositors, including Plaintiffs, that Wright Bros. was well-respected, legitimate, solvent, and able to meet

---

[2]  Citations are to the numbered paragraphs in the Complaint at ECF No. 1-2.

its financial and contractual obligations. ¶¶47, 48, 50, 74. It is not uncommon for banks to issue such letters regarding their customers. ¶48. BOA knew that Wright Bros. would provide the Letters to potential victims of the Ponzi scheme who would rely upon them. ¶¶50, 86. BOA also intended reliance by third parties because it "knew or should have known" that potential depositors "who may not have received the Letters directly from [BOA] were also made aware of the Letters and the information contained therein and relied upon the Letters to make deposits in the Trust Account." ¶¶76, 99, 106.

BOA issued the Letters from 2015 through 2019, touting its long-standing and "strong banking relationship" with Wright Bros.; some of the Letters were received by Plaintiffs. ¶¶51-74. The content of the Letters varied: some stated that millions of dollars in aviation transactions had passed through the Wright Bros.' account during a specific six-month period, others gave the "average volume" in the account over the previous six months, and others listed specific amounts that the Trust Account maintained as "an aggregate average collected deposit" for the previous year. *Id.*

In 2016, two of Plaintiffs' representatives communicated with employees of BOA about Wright Bros.[3] The employees confirmed the information contained in the Letters. ¶¶87-88. Plaintiffs were assured by the BOA employees that Wright Bros. was a longtime client in good standing with an excellent reputation and that it maintained substantial deposits at BOA. *Id.* Plaintiffs would not have deposited the

---

[3] The Complaint does not say how this information was communicated.

funds into the Trust Account but for the assurances made during these communications and contained in BOA's Letters. ¶89.

Between February 2018 and August 2019, BOA issued Letters that contained materially false and misleading information regarding the activity and balances in the Trust Account. ¶¶77-81. The February 2018 Letter stated that Wright Bros.' "average volume" over the previous six months was $183 million, but that was the total of credits and deposits for that period, not the average. ¶78. (The average amount in the account during that time was actually around $31 million). The March 2019 Letter stated that Wright Bros. "maintained an average collected balance of $25,700,936.26 over the past six months." ¶90, Exhibit G. However, the "true average ledger balance" for that time period was only $11,220,149.21. ¶80. The August 2019 Letter stated that Wright Bros. "maintained an average collected balance of $33,938,782.00 over the past six months," but the true average ledger balance was only $5,664.940 (a difference of "more than $28 million"). ¶81.

Federal law, including the Bank Secrecy Act, requires BOA to establish policies and procedures for collecting and monitoring information about its customers, including Wright Bros., to ensure they "are not bad actors." ¶¶40-45, 166. Trust accounts usually require enhanced due diligence, such as having an automated account monitoring system that examines transactions to identify common characteristics of transactions related to a Ponzi scheme. ¶¶44-46.

When issuing comfort and balance verification letters which are "critically significant to third parties who have knowledge of them . . . prudent bank[s]

maintain[ ] stringent policies and procedures in connection with drafting, reviewing, and issuing [these] letters in order to ensure that the information contained therein is accurate, complete, and truthful . . ." ¶49. These policies and applicable banking regulations required BOA to "review actual balances in Wright Brothers' accounts before drafting letters that included specific representations about the account balances." ¶96.

### ALLEGATIONS MADE "UPON INFORMATION AND BELIEF"

In the Complaint, Plaintiffs make the following claims upon information and belief; because they are not entitled to the assumption of truth they will not be considered in assessing whether Plaintiffs have satisfied their pleading burden under Rule 8(a):

- "[U]pon information and belief, [BOA] employs an automated account monitoring system to detect suspicious or potentially fraudulent transactions like the transactions typically seen in Ponzi schemes, and that system should have generated an alert for each and every deposit, withdrawal or any transaction with suspicious attributes." ¶46.

- "Upon information and belief, pursuant to its internal policies, [BOA] is responsible for taking measures to ensure that Wright Brothers, and other customers, are not engaged in any suspicious banking activity and to conduct appropriate due diligence on its customers and their accounts." ¶166.

- "Upon information and belief, [BOA] failed to undertake the recommended enhanced due diligence for a trust account and failed to monitor for suspicious activity." ¶173.

- "Upon information and belief, [BOA] has internal policies and procedures that govern the content and provision of comfort and balance verification letters." ¶49.

- "[U]pon information and belief, [BOA's] own internal policies and procedures, required [BOA] to conduct due diligence on a customer and its accounts before drafting letters including information about that customer and its accounts." ¶¶95, 107, 144, 155.

- "[U]pon information and belief, [BOA's] own internal policies and procedures, required [BOA] review the actual balances in Wright Brothers' accounts before drafting letters that included specific representations about the account balances." ¶¶96, 108, 145, 156.

- "Upon information and belief, [BOA] complied with its internal and external obligations and, as such, [BOA] knew or should have known the information stated in the Letters was false and inaccurate or was otherwise rendered misleading by virtue of omissions of other material information." ¶¶97, 109, 146, 157.

- "Upon information and belief, [BOA] did not limit to whom the Letters would be given or disclosed and, on the contrary, knew or had reason to know that [the fraudsters] used the issuance and existence of the Letters to lure unsuspecting victims into the Ponzi scheme." ¶75.

- The January 2019 Letter stated that over $257 million in "aviation transactions have passed through" the Wright Bros. Trust Account in the previous six months, but "upon information and belief" this included "numerous large transactions . . . [that were] unrelated to aviation transactions." ¶79.

## DISCUSSION

### *Actual and Constructive Fraud (Counts I and II)*

"The distinguishing element of actual fraud . . . is always untruth between the two parties to the transaction, so that actual fraud may be reduced to misrepresentation and concealment." *Douglas v. Ogle*, 80 Fla. 42, 44–45, 85 So. 243, 244 (1920) (quotations and citation omitted). "The essential difference between actual and constructive fraud lies with intent. In contrast to actual fraud, which relies on the existence of a positive misrepresentation or nondisclosure of a material fact, constructive fraud is based on a presumption of fraud, without the showing of intent, because of the fiduciary or confidential relationship between the parties." *Harbaugh v. Greslin*, No. 03-61674-CIV, 2004 WL 5589736, at *6 (S.D. Fla. Dec. 14, 2004).[4]

> "'Constructive fraud is simply a term applied to a great variety of transactions which equity regards as wrongful . . . [with] similar effects as those which follow from actual fraud . . .'" *Am. Honda Motor Co., Inc. v. Motorcycle Info. Network, Inc.*, 390 F. Supp. 2d 1170, 1179 (M.D. Fla. 2005) (quoting Douglas v. Ogle, 85 So. 243, 244 (Fla. 1920)). "Under Florida law, constructive fraud occurs 'when a duty under a confidential or fiduciary relationship has been abused or where an unconscionable advantage has been taken.'" *Id.* (quoting *Levy v. Levy*, 862 So. 2d 48, 53 (Fla. Dist. Ct. App. 2003)). "Constructive fraud may be based on a

---

[4] Since constructive fraud does not require a showing of intent, it is not subject to Rule 9's heightened pleading requirements. *Catano v. Capuano*, No. 18-20223-CIV, 2020 WL 639406, at *12, n.7 (S.D. Fla. Feb. 11, 2020).

misrepresentation or concealment, or the fraud may consist of taking an improper advantage of the fiduciary relationship at the expense of the confiding party." *Levy*, 862 So. 2d at 53 (citing *Beers v. Beers*, 724 So. 2d 109, 116 (Fla. Dist. Ct. App. 1998)).

*Kapila v. Militzok*, No. 15-60764-CIV, 2015 WL 7272761, at *5 (S.D. Fla. Nov. 18, 2015).

"Under Florida law, a fiduciary relationship is established where confidence is reposed as a result of the position of superiority and influence held by the fiduciary." *Harbaugh*, 2004 WL 5589736 at *6. *See also Cabot E. Broward 2 LLC v. Cabot*, No. 16-61218-CIV, 2016 WL 8740484, at *3 (S.D. Fla. Dec. 2, 2016) (Florida courts have implied fiduciary relationships when "confidence is reposed by one party and trust accepted by the other") (quoting *First Nat'l Bank & Trust Co. v. Pack*, 789 So. 2d 411, 414-15 (Fla. Dist. Ct. App. 2001)). "In an arms length transaction, however, there is no duty imposed on either party to act for the benefit or protection of the other party." *Harbaugh*, 2004 WL 5589736 at *6. "The fact that one party places trust or confidence in the other does not create a confidential relationship in the absence of some recognition, acceptance or undertaking of the duties of a fiduciary on the part of the other party." *Id.* (citation omitted).

Here, Plaintiffs have failed to allege facts sufficient to support a cause of action for either actual or constructive fraud. With regard to actual fraud, Plaintiffs have not alleged facts entitled to the assumption of truth that plausibly allege an intentional misrepresentation or concealment by BOA. *See Taylor v. Kenco Chem. & Mfg. Corp.*, 465 So. 2d 581, 589 (Fla. Dist. Ct. App. 1985) ("Fraud contemplates an intent to deceive"); *Parker v. State of Fla. Bd. of Regents ex rel. Fla. State Univ.*, 724

So. 2d 163, 169 (Fla. Dist. Ct. App. 1998) ("bad faith must be deemed to be a necessary element of any action for fraud"). By itself, the fact that BOA issued Letters giving purportedly inaccurate information regarding the average balances held in the Trust Account is insufficient to establish intent because it is equally plausible that those inaccuracies were simply erroneous miscalculations.

Similarly, Plaintiffs' claim for constructive fraud fails because the well-pled facts do not plausibly show the existence of a fiduciary relationship between Plaintiffs and BOA; the Complaint only contains conclusory factual and legal statements that are not entitled to the assumption of truth. For example, the Complaint alleges that BOA knew "the nature of the relationship" between Plaintiffs and Wright Bros. and that the deposited funds were to be held in escrow. ¶39. The Complaint also alleges that BOA "knew that Wright Brothers, as escrow agent, was a fiduciary of Plaintiffs" and that "because [BOA] knew that the deposits in the Trust Account were to be held in escrow," BOA "had a confidential or fiduciary duty to Plaintiffs." ¶¶102, 103, 131.[5]

---

[5] The Complaint also alleges that BOA "knew or should have known that Plaintiffs' Escrow Funds deposited in the Trust Account could not be withdrawn unless or until the condition precedents set forth in the escrow agreement had been met" and that BOA "knew of should have known that the Escrow Funds were to be returned to Plaintiffs upon the occurrence of a condition precedent." ¶¶169-170. But, there are no facts alleged that BOA was ever given a copy of the escrow agreement or knew of its contents. *See, e.g., Groom v. Bank of Am.*, No. 8:08-CV-2S67-JDW-EAJ, 2012 WL 50250, at *3 (M.D. Fla. Jan. 9, 2012) (plaintiffs "have not offered anything to show that the banks had knowledge of [their] relationship" with account holder). Therefore, even viewed in the light most favorable to Plaintiffs, these are not plausible inferences that can be drawn; they are conclusory statements without any factual foundation and as such, they are not entitled to the assumption of truth.

Under Florida law, banks ordinarily do not owe a fiduciary duty to their own customers (*Lamm v. State St. Bank & Tr. Co.*, 889 F. Supp. 2d 1321, 1331 (S.D. Fla. 2012)), and so it follows that a bank would also not owe a fiduciary duty to a third-party who chooses to deposit money into a customer's account. While the Complaint alleges a plausible fiduciary relationship between Plaintiffs and Wright Bros., it does not adequately allege how that relationship extends to BOA so as to impose upon it a fiduciary duty owed to Plaintiffs. Indeed, a fiduciary relationship requires the acceptance of trust by the fiduciary and here, there are no facts alleged to show that BOA accepted that responsibility. *Id.* at 1331-32 ("One may not . . . unilaterally impose a fiduciary relationship [on a lender] without a conscious assumption of such duties by [the lender] to be held liable as a fiduciary . . . The fact Plaintiff unilaterally placed his trust in State Street to oversee the account investments is therefore insufficient to create a fiduciary relationship.") (citations omitted). For these reasons, Counts I and II must be dismissed.

<u>*Aiding and Abetting Claims (Counts III and IV)*</u>

In Florida, tort claims predicated on a theory of aiding and abetting have three elements: (1) the existence of an underlying violation; (2) knowledge of the violation by the alleged aider and abettor; and (3) the rendering of substantial assistance in committing the violation by the alleged aider and abettor. *Lawrence v. Bank of Am., N.A.*, 455 F. App'x 904, 906 (11th Cir. 2012); *Chang*, 845 F.3d at 1097–98 (citing *ZP*

*No. 54 Ltd. P'ship v. Fid. & Deposit Co. of Md.*, 917 So.2d 368, 72 (Fla. Dist. Ct. App. 2005)).[6]

"While the element of actual knowledge may be alleged generally, the plaintiff still must accompany that general allegation with allegations of specific facts that give rise to a strong inference of actual knowledge regarding the underlying fraud." *Todd Benjamin Int'l*, 2023 WL 4457458, at *15 (*quoting Lamm v. State St. Bank & Tr. Co.*, 889 F. Supp. 2d 1321, 1332 (S.D. Fla. 2012), *aff'd sub nom. Lamm v. State St. Bank & Tr.*, 749 F.3d 938 (11th Cir. 2014)). "Conclusory statements that a defendant 'actually knew' [are] insufficient to support an aiding and abetting claim where the facts in the complaint only suggest that the defendant 'should have known that something was amiss.'" *Id.* (quoting *Platinum Estates, Inc. v. TD Bank, N.A.*, No. 11–60670–CIV, 2012 WL 760791, at *3 (S.D. Fla. Mar. 8, 2012)).

"Substantial assistance occurs when a defendant affirmatively assists, helps conceal or fails to act when required to do so, thereby enabling the breach to occur." *Chang*, 845 F.3d at 1098 (quoting *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 295 (2d Cir. 2006)). "Because 'banks do have a duty to safeguard trust funds deposited with them when confronted with clear evidence indicating that those funds are being mishandled,' a bank's inaction—that is, its failure to stop the theft of such trust funds—can constitute substantial assistance." *Id.* "[T]o establish that a bank substantially assisted a fraudulent scheme to steal trust funds, knowledge of the

---

[6] The Complaint alleges two separate claims for aiding and abetting (based on fraud and breach of fiduciary duty), but these claims can be analyzed together using the same standard. *See also Lawrence*, 455 F. App'x at 906.

underlying fraud "is the crucial element." *Chang*, 845 F.3d at 1098 (quoting *In re First Alliance Mortg. Co.*, 471 F.3d 977, 995 (9th Cir. 2006)).

Here, Plaintiffs have not alleged facts establishing BOA's actual knowledge of or substantial assistance to the fraud. At most, the Complaint alleges that BOA (1) ignored "suspicious" activity in the Trust Account that was purportedly inconsistent with the purpose of an escrow account, (2) failed to comply with federal regulations or its internal procedures for monitoring such accounts, and (3) issued letters of reference that contained inaccurate statements. Even taken together, these allegations do not establish that BOA had actual knowledge of the Wright Bros.' fraud, much less that it provided substantial assistance to the fraud.

First, "red flags" in banking transactions alone "d[o] not constitute the conscious awareness of wrongdoing necessary to maintain an aiding and abetting cause of action." *Groom v. Bank of Am.*, No. 8:08-CV-2S67-JDW-EAJ, 2012 WL 50250, at *3 (M.D. Fla. Jan. 9, 2012) (quoting *Lawrence v. Bank of America, N.A.*, No. 8:09–cv–2162–T–33TGW, 2010 WL 3467501, at *3 (M.D. Fla. Aug. 30, 2010)). *See also Wiand v. Wells Fargo Bank, N.A.*, 938 F. Supp. 2d 1238, 1245 (M.D. Fla. 2013) (while red flags "may have put the banks on notice that some impropriety may have been taking place, those alleged facts do not create a strong inference of actual knowledge" of wrongdoing . . . [and] banks that conduct routine banking services, even for transactions or activities that appear atypical upon review, are not required to investigate the account holder's transactions") (citations omitted).

Here, the Complaint merely alleges that BOA "identified or should have identified anomalies concerning the Trust Account because of the unusual timing and frequency of withdrawals from the account . . . [BOA] knew or should have known that the account's activity was unusual and suspicious [for an escrow account because] in some instances, the monies were transferred out of the Trust Account on the same day they were deposited [which is] flatly inconsistent with the nature of the account [since the] deposits [were] to be held in escrow pending the consummation of an aviation transaction." ¶83.

"[W]here the facts in the complaint only suggest that the defendant 'should have known that something was amiss'" (*Platinum Estates, Inc.* 2012 WL 760791, at *3), they are insufficient to support the knowledge requirement of an aiding and abetting claim. Moreover, allegations of a bank's failure to adhere to industry standards is insufficient to establish aiding and abetting because the "failure to act, absent a duty to act, is not substantial assistance." *Groom*, 2012 WL 50250, at *4 (citation omitted). The Complaint does not adequately allege any duty that BOA owed to Plaintiffs.

Similarly, I reject Plaintiffs' argument that the allegations in the Complaint regarding BOA's issuance of the Letters containing allegedly inaccurate information show the sort of "atypical activity," which could raise "a very strong inference of conscious wrongdoing." ECF No. 30 at 20-21. In assessing aiding and abetting claims, courts must distinguish between conduct of the alleged aider and abettor that is done in the ordinary course of business and conduct that is "atypical and lacks business

justification." *Perlman v. Bank of Am., N.A.*, No. 11-80331-CV, 2011 WL 13108060, at *6 (S.D. Fla. Dec. 22, 2011). The degree of knowledge that can be inferred "depend[s] on how ordinary the assisting activity is in the business involved." *Id.* "[S]tronger evidence of complicity" is required "for the alleged aider and abettor who conducts what appears to be a transaction in the ordinary course of his business," whereas conduct that is atypical or lacks business justification may allow for an inference of knowledge. *Id.* quoting *Woods v. Barnett Bank of Fort Lauderdale*, 765 F.2d 1004, 1009-10 (11th Cir. 1985).

Here, Plaintiffs' claim that BOA's issuance of the Letters was atypical is unsupported. Given that the Complaint's allegations allow for the equally plausible inference that the inaccuracies contained in the Letters were unintentional, the only consideration left for the Court is whether the bank's issuance of reference letters was done in the ordinary course of its business. It appears that the letters were issued in the ordinary course and Plaintiffs do not allege otherwise. In fact, the Complaint acknowledges that "[i]t is not uncommon for banks to issue comfort and balance verification letters." ¶48.

The cases Plaintiffs cite reveal that atypical bank activities are easily distinguishable from the issuance of routine reference letters. For example, in *Perlman*, the bank opened multiple investment club accounts for its fraudster-customer in violation of its own policy prohibiting them. *Id.,* 2011 WL 13108060, at *7. Likewise, in *Smith v. First Union National Bank*, No. 1:00–cv–04485, 2002 WL 31056104 (S.D. Fla. Aug. 23, 2002), the bank employee admitted that she "did some

transferring I shouldn't have done." *Id.* at *4. As these cases illustrate, allegations that expose out-of-the-ordinary activities that lack a business justification can be sufficient to sustain aiding and abetting claims, but there is nothing comparable alleged in the Complaint here. Accordingly, Plaintiffs' claim that the issuance of the Letters is sufficient to show actual knowledge is unavailing.[7]

In the alternative, Plaintiffs argue that actual knowledge can be shown through willful blindness. ECF No. 30 at 23-24. BOA responds that Plaintiffs fail to cite any case where a bank has been found to aid and abet a customer's fraud under a willful blindness theory. ECF No. 37 at 13. BOA further argues that applying a willful blindness theory here would "have the practical effect of mooting the actual knowledge requirement, contrary to Florida law." *Id.*

Willful blindness is a viable theory of actual knowledge. Willful blindness is a way of proving actual knowledge, not a substitute for it. Willful blindness is a theory of circumstantial proof where actual knowledge is imputed "when a person has his or her suspicion aroused about a particular fact, realized its probability, but deliberately refrained from obtaining confirmation because he or she wanted to remain in ignorance." Florida Pattern Jury Instruction (Criminal) 3.3(h). This theory of circumstantial proof can be applied in civil cases. *See, e.g., Intel Corp. Inv. Pol'y Comm. v. Sulyma,* 140 S. Ct. 768, 779, 206 L. Ed. 2d 103 (2020) (citing *Global-Tech*

---

[7] Given my determination that the allegations in the Complaint do not support a finding that BOA had actual knowledge of the fraud so as to support the aiding and abetting claims, I need not address whether Plaintiffs have adequately alleged the element of substantial assistance.

*Appliances, Inc. v. SEB S. A.*, 563 U.S. 754 (2011)). And, it is axiomatic that there is no legal difference between direct or circumstantial evidence. *See, e.g.,* Eleventh Circuit Pattern Jury Instruction (Civil) 3.3. BOA has not shown a reason why — or cited any authority holding that — willful blindness cannot be used to show actual knowledge in this case.

Nevertheless, here, the well-pled allegations do not support a plausible inference that (1) BOA was on notice of suspicious activity in the Wright Bros. account, such that it should have suspected the existence of misappropriation or (2) that BOA took affirmative steps to remain ignorant. Accordingly, Counts III and IV must be dismissed.

### *Negligent Misrepresentation (Count V)*

A negligent misrepresentation claim under Florida law has four elements: (1) there was a misrepresentation of material fact; (2) the representer either knew of the misrepresentation, made the misrepresentation without knowledge of its truth or falsity, or should have known the representation was false; (3) the representer intended to induce another to act on the misrepresentation; and (4) injury resulted to a party acting in justifiable reliance upon the misrepresentation. *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1259 (11th Cir. 2014) (citations omitted). A negligent misrepresentation claim requires heightened specificity under Rule 9(b). *Lamm v. State St. Bank & Tr.*, 749 F.3d 938, 951 (11th Cir. 2014).

In its motion to dismiss, BOA contends that the Complaint does not comply with Rule 9(b) because it does not adequately allege what benefit BOA sought to gain

from Plaintiffs' reliance on the misrepresentations and does not plausibly alleges that BOA intended to induce Plaintiffs to deposit money in the Wright Bros. account. ECF No. 24 at 21-23.

I reject BOA's Rule 9(b) argument. The issue presented by BOA's motion is whether the Complaint states a *claim* upon which relief can be granted. A claim is defined by its elements. So long as all the elements of Count V are plausibly alleged with the specificity required by Rule 9(b), the motion to dismiss this count must be denied. BOA agrees that the elements of negligent misrepresentation do not include the defendant obtaining a benefit. BOA also agrees that Rule 9(b) does not add a new element to this cause of action. Combining these concessions, BOA agrees that Plaintiffs can prevail on Count V even if they do not prove that BOA obtained a benefit. Nevertheless, BOA argues that Count V must be dismissed for failure to state a claim because it does not plead this non-existent element. Simple logic refutes this argument. Put differently, even if the Complaint were amended to explicitly say that BOA did not benefit from the misrepresentations, it would still plausibly allege every element of negligent misrepresentation and therefore would not be subject to dismissal under Rule 12(b)(6).

Putting aside simple logic, the cases BOA cites are not applicable here. BOA relies on Eleventh Circuit opinions quoting *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1380-81 (11th Cir. 1997). *See, e.g., Hosch v. Wachovia Bank, N.A.*, 815 F. App'x 352, 354 (11th Cir. 2020) (citing *Brooks*). *Brooks* involved a multi-count class action complaint based on alleged violations of the Medicare Secondary

Payor statute and that included a civil RICO claim comprising predicate acts of federal mail and wire fraud. The district court granted summary judgment on all counts because the Medicare Secondary Payor statute did not apply. In *dictum*, it said the complaint failed to satisfy Rule 9(b), which required the plaintiff to allege: "(1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the Plaintiffs; and (4) what the defendants gained by the alleged fraud." *Brooks*, 116 F.3d at 1380-81. The Eleventh Circuit affirmed the summary judgment order but explicitly did not adopt the Rule 9(b) holding. *Id*. at 1365.

As support for this standard, *Brooks* cited *Fitch v. Radnor Industries, Ltd.,* No. 90–2084, 1990 WL 150110, at *2 (E.D. Pa. Sept. 27, 1990), a district court decision from the Eastern District of Pennsylvania that involved claims of securities fraud under Section 17(a) of the Securities Act of 1933. *Fitch,* in turn, cited to *O'Brien v. Nat'l Prop. Analysts Partners,* 719 F. Supp. 222, 225 (S.D.N.Y. 1989), which also involved allegations of securities fraud.

The federal mail and wire fraud statutes require, as an element, that the perpetrator scheme to obtain money or property. *McNally v. United States,* 483 U.S. 350 (1987). Virtually identical language exists in the federal securities laws. *Compare* 18 U.S.C. § 1341 *with* 15 U.S.C. §77q(a). Therefore, the Eleventh Circuit opinions are best read as saying that, when the underlying statute requires proof that the fraud perpetrator obtained property, Rule 9(b) requires the plaintiff to plead that fact with

heightened specificity. Here, Count V does not require, as an element, proof that BOA obtained a benefit. So, the lack of any allegations of benefit does not run afoul of Rule 9(b).

Regardless, I find that the Complaint adequately pleads facts showing how BOA benefitted. For example, the Complaint alleges that BOA "earned fees from maintaining" the Trust Account which had "substantial deposits," that BOA had a "pecuniary interest" in the Trust Account's transactions," and that it "profit[ed] from its own misconduct." ¶¶37, 87, 90, 161. *See Chang v. JPMorgan Chase Bank, N.A.*, 845 F.3d 1087, 1096 (11th Cir. 2017) (Court found bank benefitted from fees generated by escrow account with "very substantial deposits" that was used to perpetuate a fraud). Moreover, a plausible inference can be drawn from the allegations in the Complaint that because Wright Bros. was a longstanding customer, BOA complied with its customer's "request" to furnish the Letters, because BOA did not want to jeopardize a lucrative relationship. ¶¶51, 54, 57, 59, 61, 64, 67, 70, 72. The Complaint plausibly pleads that BOA benefitted from maintaining Wright Bros. as a customer.

With regard to BOA's second argument, I find that the Complaint adequately pleads that BOA intended to induce Plaintiffs to deposit money in the Wright Bros.' account. In its motion, BOA attempts to narrow the scope of this element, claiming that the pleadings do not establish that BOA "sought to induce reliance on *the letters*." ECF No. 24 at 22 (emphasis added). Notably, the third element of fraudulent misrepresentation is that "the representer intended to induce another to act on the

*misrepresentation*." *Osorio*, 746 F.3d at 1259 (emphasis added). Here, the overall misrepresentation was that Wright Bros. was a legitimate, financially-solvent company. That misrepresentation encompassed more than just the letters BOA issued; it included the 2016 conversation between a representative for one of the Plaintiffs and BOA, when BOA learned of that Plaintiff's reliance on the letters because it sought to confirm the accuracy of them. ¶88.

But, even without that conversation, the letters themselves are adequate to satisfy this element.  This is because several of the letters are specifically called "letter[s] of reference."  ¶51, 54, 64, 67. Thus, on their face, the very purpose of the letters was for some third party to rely on them and agree to do business with Wright Bros. These facts are distinguishable from *Kruse v. Massachusetts Mut. Life Ins. Co.*, cited by BOA, wherein the allegations in the complaint merely alleged that the defendant life insurance company sent a letter in response to a request for information; the allegations "did not show that [the defendant] necessarily did so with any particular concern on its part as to what [the recipient] might do, or not do, with the information provided."  *Id.*, No. 17-CV-61115, 2017 WL 3494334, at *6 (S.D. Fla. Aug. 15, 2017).

Finally, it is immaterial that the letters were not addressed to Plaintiffs. "[T]he law does not require that the false statement be made directly to the injured party, 'provided [that the statement is] made with the intent that it shall reach ... and be acted on by the injured party." *Kerruish v. Essex Holdings, Inc.*, No. 16-60877-CIV, 2017 WL 10457076, at *2 (S.D. Fla. Aug. 9, 2017) (quoting *Harrell v. Branson*, 344

So. 2d 604, 606 (Fla. Dist. Ct. App. 1977)). Accordingly, Count V is adequately pled under both Rule 9 and Rule 12.

### Negligence under §552 of the Restatement (Second) of Torts (Count VI)

Count II alleges a cause of action for Negligence under Section 552 of the Restatement (Second) of Torts (entitled Information Negligently Supplied for the Guidance of Others), which states as follows:

> One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

Restatement (Second) of Torts § 552(1) (1977). Section 552 of the Restatement was adopted by the Florida Supreme Court in *Gilchrist Timber Co. v. ITT Rayonier, Inc.*, 696 So. 2d 334 (Fla. 1997). Negligent misrepresentation under §552 of the Restatement is distinguishable from common law negligent misrepresentation in that it does not require an intent to deceive, "but only good faith coupled with negligence." *Todd Benjamin Int'l, Ltd. v. Grant Thornton Int'l, Ltd.*, No. 20-21808-CIV, 2023 WL 4457458, at *14 (S.D. Fla. July 11, 2023) (quoting *Gilchrist Timber Co. v. ITT Rayonier, Inc.*, 127 F.3d 1390, 1395 (11th Cir. 1997)).

"[T]he central principle operating within section 552 is that the defendant supplier of information must have a pecuniary interest in the transaction or context in which the information is supplied in order to merit the imposition of a duty of care in obtaining and communicating the information." *Blumstein v. Sports Immortals,*

*Inc.*, 67 So. 3d 437, 441 (Fla. Dist. Ct. App. 2011) (citation omitted). "The fact that the information is given in the course of the defendant's business, profession or employment is a sufficient indication that he has a pecuniary interest in it, even though he receives no consideration for it at the time." *Id.* (quoting Restatement (Second) of Torts § 552 cmt. d.). Moreover, where

> the information is given in the capacity of one in the business of supplying such information, that care and diligence should be exercised which is compatible with the particular business or profession involved. Those who deal with such persons do so because of the advantages which they expect to derive from this special competence. The law, therefore, may well predicate on such a relationship, the duty of care to insure the accuracy and validity of the information.

*Blumstein*, 67 So. 3d at 441 (quoting 1 F. Harper & F. James, *The Law of Torts* § 7.6 (1956)).

Here, BOA issued the Balance Verification Letters on its letterhead and did so in the course of its business and in response to a customer's request. BOA had a pecuniary interest in having Plaintiffs deposit millions of dollars into the bank and in maintaining its longstanding relationship with Wright Bros. This pecuniary interest gave rise to an accompanying duty of care in communicating accurate information to Plaintiffs.

In its motion, BOA does not specifically move to dismiss Count VI. It seems to argue that Count VI is duplicative of Count V because Section 552 only "describes and informs a claim for negligent misrepresentation" in that it "merely establishes that a claimant, if successful in pleading negligent misrepresentation, may recover their pecuniary losses—i.e., that negligent misrepresentation is an actionable claim

in Florida as an exception to the economic loss rule." ECF No. 24 at n.7. In any event, given that there is no pending motion to dismiss Count VI, I find that it is sufficient to proceed at this stage.

### *Negligence (Count VII)*

Under Florida law, "[t]o maintain an action for negligence, a plaintiff must establish that the defendant owed a duty, that the defendant breached that duty, and that this breach caused the plaintiff damages." *Chang*, 845 F.3d at 1094 (quoting *Fla. Dep't of Corr. v. Abril*, 969 So.2d 201, 204 (Fla. 2007)). The Complaint alleges that BOA "owed a duty to Plaintiffs to provide only accurate and complete information," because Plaintiffs were "foreseeable recipients" of the Letters and BOA "made a decision to speak and had specifical knowledge of material facts to which Plaintiffs did not have access." ¶¶164, 165.

BOA correctly argues that there is no legal or factual support for Plaintiffs' claim that BOA owed a duty to anyone who deposited money in any trust or escrow account maintained by the bank, and certainly not a fiduciary duty. "[A]s a general matter, 'a bank does not owe a duty of care to a noncustomer with whom the bank has no direct relationship.'" *Chang*, 845 F.3d at 1094 (citation omitted).

The Court is mindful that there is an exception to this rule: a bank may be liable to a noncustomer for its customer's misappropriation when a fiduciary relationship exists between the customer and the noncustomer, the bank knows or ought to know of the fiduciary relationship, and the bank has actual knowledge of its customer's misappropriation." *Id.* at 1094-95. Here, however, Plaintiffs have not

alleged nonconclusory facts that plausibly imply that BOA had actual knowledge of Wright Bros.' fiduciary duty to Plaintiffs or of Wright Bros.' misappropriation. Even if Plaintiffs could allege facts to create a plausible inference regarding the bank's knowledge of the fiduciary relationship between Wright Bros. and Plaintiffs, there is insufficient evidence that BOA had actual knowledge of the fraud, as discussed above in the context of the Complaint's aiding and abetting counts. For this reason, Count VII must be dismissed.

## CONCLUSION

Based on the foregoing, Defendant's Motion to Dismiss (ECF No. 24) is **GRANTED IN PART AND DENIED IN PART.** Counts I-IV and VII are hereby dismissed without prejudice. Defendant shall file its Answer to Counts V and VI by **October 2, 2023.** The parties shall confer and submit a jointly proposed scheduling order.

If Plaintiffs want to amend their Complaint, they should file a Motion for Leave to Amend that conforms to Local Rule 15.1 by **October 2, 2023**.

**DONE and ORDERED** in Chambers at West Palm Beach, Palm Beach County, in the Southern District of Florida, this 18th day of September 2023.

_____
BRUCE E. REINHART
UNITED STATES MAGISTRATE JUDGE